UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JULIE MADSEN, M.D., an individual,<br><br>       Relator/Plaintiff,<br><br>vs.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD., an Idaho Corporation; ST. LUKE'S McCALL, LTD., an Idaho Corporation; IDAHO ELKS REHABILITATION HOSPITAL, INC., an Idaho Corporation; ELK'S WOUND CARE CENTER, an Idaho Joint Venture; CENTER FOR WOUND HEALING AND HYPERBARIC MEDICINE, LLP; WARREN GUDE, M.D.; RAYMOND OTTO, M.D.; and JOHN/JANE DOES 1 through X, whose true identities are presently unknown,<br><br>       Defendants. | Case No. 1:15-cv-00210-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.   INTRODUCTION

Pending before the Court is Plaintiff-Relator Dr. Julie Madsen's Motion for an Award of Attorney Fees to Johnson & Monteleone, L.L.P. (Dkt. 95) and her Motion for an Award of Attorney Fees to Rossman Law Group, P.L.L.C. (Dkt. 96). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court

finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court GRANTS in PART and DENIES in PART Relator's Motions.

## II.    BACKGROUND

On June 16, 2015, Dr. Madsen, as Plaintiff and Relator, filed her original complaint. Dkt. 1. Dr. Madsen alleged three claims against St. Luke's Health System, Ltd. ("St. Luke's") and St. Luke's McCall, Ltd. ("St. Luke's McCall"), Idaho Elks Rehabilitation Hospital, Inc's ("Idaho Elks"), Warren Gude, and Raymond Otto (collectively "Defendants"): 1) violations under 31 U.S.C. §§ 3729(a)(1), (2) of the False Claims Act; 2) wrongful employment retaliation in violation of 21 U.S.C. § 3730(h) of the False Claims Act; and 3) violations under 42 U.S.C. §1320a–7b(b) of the Anti-Kickback Statute and under 42 U.S.C. §1395nn of the Stark Law.

The United States investigated Dr. Madsen's allegations for approximately fourteen months and ultimately decided not to intervene in the case. Dkt. 22.

On November 22, 2017, St. Luke's and St. Luke's McCall (collectively "St. Luke's Defendants") filed a joint motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. 50. On that same date, Gude and Otto (collectively "Physician Defendants") also filed a joint motion to dismiss. Dkt. 51. On November 30, 2017, Idaho Elks joined the St. Luke's Defendants' motion to dismiss and argued for dismissal on additional grounds. Dkt. 53.

Thereafter, Dr. Madsen agreed to narrow this dispute exclusively to her allegations

concerning telemedicine fraud under the False Claims Act ("FCA"). Dkt. 56, at 2. On July 13, 2018, the parties filed a Stipulated Motion for Leave to Amend Verified Amended Complaint to Dismiss Claims and Allegations with Prejudice. Dkt. 60. The Court granted the stipulated motion (Dkt. 61), and on August 15, 2018, Dr. Madsen filed her "First Amended Complaint and Demand for Jury Trial" (Dkt. 62), which she later clarified should have been titled her "Second Amended Complaint" (Dkt. 64, at 2).

On August 21, 2018, the Court dismissed the Second Amended Complaint on the grounds that Dr. Madsen had failed to plead a plausible violation of the FCA against Defendants with particularity as required by Federal Rules of Civil Procedure 8(a)(2) and 9(b). Dkt. 63. The Court granted leave to amend, and on September 4, 2018, Dr. Madsen filed her Third Amended Complaint and Demand for Jury Trial. Dkt. 64.

On October 2, 2018, Idaho Elks filed its second motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. 67. On the same day, the St. Luke's Defendants filed their own motion to dismiss (Dkt. 70), as did the Physician Defendants (Dkt. 71).

On January 31, 2019, the United States filed a motion to approve settlement pursuant 31 U.S.C. § 3730(c)(2)(B) and dismiss the case. Dkt. 80. Dr. Madsen filed the sole opposition to the motion (Dkt. 81); the other parties supported the Government's settlement motion (Dkts. 83, 84, 85).

On November 14, 2019, the Court held oral argument on Defendants' motions to dismiss and the Government's motion to approve settlement. During oral argument, Dr. Madsen withdrew her objection to the Government's motion. As all parties consented to

the proposed settlement, the Court granted the Government's motion, found the Defendants' motions to dismiss moot, and dismissed the case with prejudice. Dkt. 94.

On December 2, 2019, Dr. Madsen filed the pending motions with the Court. Pursuant to 31 U.S.C. § 3730(d)(2), Federal Rule of Civil Procedure 54(d), and District Court of Idaho Local Rule of Civil Procedure 54.2, Dr. Madsen asks the Court to award her $28,352.75 in attorney fees for Johnson & Monteleone, L.L.P's ("Johnson & Monteleone") services and $11,165.00 in attorney fees and $510.60 in costs for Rossman Law Group, PLLC's ("Rossman Law") services.

### III.   LEGAL STANDARD

When a qui tam action is settled, the relator is entitled to receive "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). The calculation of a reasonable fee award involves a two-step process. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citation omitted). The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustment upward or downward is "the

exception rather than the rule." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

## IV.    DISCUSSION

### A. Lodestar Calculation

#### 1. *Reasonable Hourly Rate*

To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). Generally, the forum district represents the relevant legal community. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The relevant legal community in this case is Boise, Idaho because Dr. Madsen's Complaint was filed in the Southern Division of the District of Idaho. Here, the attorneys and staff involved request the following rates: Jason Monteleone—$315.00 and $275.00 per hour; Cara Rice—$45.00 per hour; Eric Rossman—$350.00 per hour; Erica Phillips—$300.00 per hour; and Jason Carroll—$90.00 per hour. Attorneys Monteleone and Rossman submitted affidavits stating that these are reasonable rates in Boise, the relevant community where the case was filed. Defendants do not object to these rates, and the Court finds they are reasonable.

#### 2. *Calculation of Hours*

The next question is whether the time spent on this litigation, a total of 34.75 hours for Rossman Law and 102.91 for Johnson & Monteleone, is reasonable. Defendants object to the number of hours claimed by Dr. Madsen's attorneys on several grounds. They cumulatively argue that not all hours are reasonably incurred because some of the fees

incurred 1) are unrelated to Dr. Madsen's successful claim; 2) are associated with unrelated legal actions; 3) appear to be duplicative entries; 4) relate to opposing the Government's settlement efforts; and 5) pertain to her own pleading deficiencies. Each objection will be addressed below.

a. <u>Reductions for Partial Success</u>

Defendants argue that Dr. Madsen only obtained limited success in her action against them because she voluntarily dismissed some of her causes of actions for violations of the False Claims Act, the Anti-Kickback Statute, and the Stark Law. Dr. Madsen responds that she was successful because Defendants agreed to settle the FCA case based on her efforts in bringing the case.

Courts should address arguments for reducing attorney fees due to partial success during the lodestar's calculation of hours section. *See Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991) ("Since consideration of limited success is presumably subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, district courts should not ordinarily make a separate adjustment for limited success."). Courts apply a two-pronged approach for determining the amount of fees to be awarded when a plaintiff prevails on only some of his claims for relief or achieves "limited success." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). The court first determines if the successful claims were related to the unsuccessful claims. *Webb v. Sloan*, 330 F.3d 1158, 1168–69 (9th Cir. 2003). Second, courts ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at

434.

In applying the first prong, "[c]laims are unrelated if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (internal quotation marks omitted); *see also Webb*, 330 F.3d at 1168–69 (9th Cir. 2003) ("[R]elated claims involve a common core of facts *or* are based on related legal theories," with "the focus . . . . on whether the claims arose out of a common course of conduct") (emphasis in original) (internal quotation marks and citations omitted). "It may well be that cases involving [ ] unrelated claims are unlikely to arise with great frequency." *Hensley*, 461 U.S. at 435. "If it is impossible to isolate the truly unrelated claims from those related claims, the district court should instead reflect that limited success in *Hensley's* second step." *Webb*, 330 F.3d at 1169.

Dr. Madsen formally alleged three causes of action in her initial complaint. Dkt. 1. She first alleged that Defendants substantively violated the FCA by fraudulent billing claims to government agencies for Medicare and/or Medicaid healthcare services. Dkt. 1, at ¶ 105. Second, she alleged that Defendants violated the FCA by wrongfully retaliating against her for voicing her complaints about the fraudulent billing. *Id*. at ¶ 125. Third, she alleged that Defendants violated the Anti-Kickback Statute and Stark Law by creating "ghost" medical directorships who would refer Medicare and/or Medicaid beneficiaries to healthcare facilities who would pay excessive referral fees. *Id*. at ¶ 130. Although not explicitly included in her three causes of actions, Dr. Madsen incorporated by reference three other theories under which Defendants could have violated the law: (1) "incident to" billings that violated Medicare regulations because of inadequate involvement of

physicians; (3) false claims for unnecessary labs taken in a diabetic foot ulcer study research study; and (3) the billing of telehealth/telemedicine services without requisite real-time audio and video technology. *See* Dkts. 13, 13-1, 13-2, and 13-3. On July 13, 2018, Dr. Madsen stipulated to dismissal of her claims and allegations related to violating the Anti-Kickback Law, the Stark Law, and/or claims unrelated to her telehealth/telemedicine services. Dkt. 60 at 2.

St. Luke's Defendants[1] contend that Dr. Madsen "voluntarily dismissed at least three-fourths of her substantive claims against the defendants in July 2018." Dkt. 99, at 3. They observe that Dr. Madsen dismissed "all claims and allegations relating to the diabetic foot ulcer research study, medical directorship arrangements, incident to services, and the Anti-Kickback Statute and Stark Law," leaving only her FCA telehealth/telemedicine claim. *Id*. Thus, they argue the Court should reduce the attorney fees claimed before Dr. Madsen's voluntary dismissal of her claims on July 13, 2018, by at least 75 percent. *Id*. (citing *Schwarz*, 73 F.3d at 904–05) (approving 75 percent reduction "based on the survival of one part of one claim out of four" and concluding that such an "approach is entirely consistent with the cases in which we have applied *Hensley* to hold that a district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce the fee award to account for limited success"); *see also Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, No. CV02-8636MMM(PJWX), 2005 WL 927179, at *7–8 (C.D. Cal. Jan. 18, 2005) (awarding defendant 30 percent of fees "because defendant is entitled to

---

[1] Joined by Otto and Gude. Dkt. 100.

recover attorneys' fees for defending three of the ten causes of action" and noting that "[l]itigants who make no effort to apportion fees among compensable and non-compensable claims run the risk . . . that a court will adopt such" a "cold mathematical approach")). Dr. Madsen makes no attempt to apportion the fees in her motion as to successful versus unsuccessful claims.

The Court first notes that although Dr. Madsen only dismissed her claims on July 13, 2018, she stipulated to limit her opposition to Defendants' motions to dismiss on December 13, 2017. At that time, she agreed to "dismiss, with prejudice, all of her claims other than those related to telemedicine/telehealth services, as long as all parties will bear their own costs and attorney fees related to those other claims to date." Dkt. 54, at 2. Ultimately, Dr. Madsen was successful in her claim that Defendants' telemedicine/telehealth services violated FCA, insomuch that her claims resulted in a settlement pursuant to pursuant 31 U.S.C. § 3730(c)(2)(B).

Second, while Court agrees with St. Luke's Defendants' contention that only one of her claims was successful, it disagrees that all of her other claims were unrelated to that successful claim. By the Court's calculations, Dr. Madsen alleged three formal causes of actions and asserted three other allegations of FCA violations (the research study, billings incident to services, and telehealth/telemedicine) in her original complaint. Five of the causes of actions and allegations relate to FCA. All of her FCA claims, including her wrongful employment retaliation claim, are based on similar legal theories: that Defendants submitted fraudulent billing to the Government in violation of the FCA. However, the Court finds that her Anti-Kickback Statute and Stark Law claim is factually and legally

unrelated to her FCA telemedicine/telehealth services claim. Because Dr. Madsen originally alleged an unsuccessful claim unrelated to her successful claim, the Court will exclude from the lodestar fee calculation a certain percentage of hours that were unrelated to her FCA telemedicine/telehealth services claim. Therefore, it will impose a 17%[2] reduction on Dr. Madsen's attorney fees for work done prior to December 13, 2017.

The second prong requires a court to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. A plaintiff who did not achieve every goal yet still "obtained excellent results . . . should recover a fully compensatory fee." *Id.* at 435. Courts are not to reduce for partial success twice. *See Cabrales v. L.A. Cnty.*, 864 F.2d 1454, 1465 (9th Cir. 1988) *cert. granted, judgment vacated*, 490 U.S. 1087 (1989) and opinion reinstated, 886 F.2d 235 (9th Cir. 1989) ("Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court did not 'count' for lack of success twice.").

Under the FCA, relators can obtain attorney fees for either succeeding in their claims against defendants or by obtaining a settlement. Both are successful results. The Court finds that Dr. Madsen achieved a level of success—settlement—that makes the hours expended on claims related to Dr. Madsen's allegations of telemedicine/telehealth FCA violations reasonable.

---

[2] Five out of Dr. Madsen's six causes of actions and allegations were related to the successful claim. One sixth is approximately 17%.

b.  State Action (Block-Billing)

Defendants next argue that there are several entries in Jason Monteleone's and Eric Rossman's affidavits that relate to a state court action (which included a state FCA retaliation claim) but is unrelated to the federal FCA litigation. *See Dr. Madsen v. St. Luke's Reg'l Med. Ctr., Ltd.*, No. CV OC 1411534 (Idaho 4th Jud. Dist. Ct.). Some of the entries include "block-billing" references to the attorneys' representation of Dr. Madsen in both the state and federal FCA actions. While Dr. Madsen replied to Defendants' responses to her motion for attorney fees on behalf of Rossman Law, she never replied to Defendants' responses to her motion for attorney fees on behalf of Johnson & Montelone. In her Rossman Law response, she argues that there is significant overlap in the subject matter and underlying issues in both cases.

"Block-billing" is the failure to itemize each task individually in the billing records. If, as a result, it is impossible to evaluate the reasonableness of the time spent, courts should reduce the block-billed time. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *see also Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc) ("[S]uch billing practices are legitimate grounds for reducing or eliminating certain claimed hours."). Block-billing is disfavored because it "obscures the time spent on discrete legal tasks, frustrating the Court's analysis of whether the time was reasonably spent." *Latta v. Otter*, No. 1:13-CV-00482-CWD, 2014 WL 7245631, at *10 (D. Idaho Dec. 19, 2014). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those

hours worked." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). A court

may reduce the requested fee based on this lack of specificity. *Fischer v. SJB-P.D. Inc.*,

214 F.3d 1115, 1121 (9th Cir. 2000).

Below are the Rossman Law entries Defendants collectively contend are unrelated,

in part or in whole, to the federal case:

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 11/17/2014 | ESR | Reviewed documents from Client; O/C w/ CC (Monteleone) re: case status and how to proceed with FCA case; reviewed proposed, amended complaint on W&H case to include FCA sub(h) claim. | 4.50 | $350.00 | $1,575.00 |
| 2/06/2015 | ESR | O/C w/ Client and CC (Monteleone) at RLG to review documents and case status. | 1.50 | $350.00 | $525.00 |
| 4/03/2015 | ESR | Reviewed St. Luke's opposition to amendment of sub(h) claim in state court case; legal research and e-mailed briefs and orders to CC (Monteleone) to assist in having the amendment effected; T/C w/ CC Monteleone re: federal complaint; initial review of federal complaint; review of information to include in letter to US Atty; drafted initial letter to US Atty. | 5.25 | $350.00 | $1,837.50 |

Rossman Affidavit, Dkt. 96-2, at 1. In reply, Dr. Madsen argues that nothing in the

February 6, 2015 entry provides that any of the time related to the state case rather than the

federal FCA case. She concedes that the state case referenced in the November 17, 2014

and April 3, 2015 entries concern her state FCA retaliation claim. However, she argues that

the issues underlying both the state and federal case are substantially related and involved

the same subject matter. Therefore, any reduction of attorney fees should be minimal.

The Court agrees that it is difficult to discretely separate out tasks preformed for a single client when representing said client in claims made under the same legal statute (here, the False Claims Act), even if the claims are made in two separate cases. Because the billing entries do not indicate how the other time was spent, the Court will reduce these hours spent on November 17, 2014 and April 3, 2015 by 10% in addition to the 17% reduction already imposed, i.e., by 27%. Additionally, the Court cannot definitively state that Rossman Law's February 6, 2015 entry is related to Dr. Madsen's federal case, rather than the state case. As it is the fee applicant's burden to clearly document the hours, the court will also reduce the hours by an additional 10% (27% total) out of an abundance of caution.

Below are the Johnson & Montelone entries Defendants collectively contend are unrelated, in part or in whole, to the federal case:

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 11/17/2014 | JRM | Reviewed documents from client; O/C w/ CC (Williams) re: case status and how to proceed with FCA case; reviewed proposed, amended complaint on W&H case to include FCA sub(h) claim. | 4.50 | $275.00 | $1,237.50 |
| 1/16/2015 | JRM | O/C w/ CC (Williams) to review and categorize documents for FCA case. | 2.00 | $275 | $550.00 |
| 2/06/2015 | JRM | O/C w/ client and CC (Williams) at RLG to review documents and case status. | 1.5 | $275 | $412.50 |
| 4/03/2015 | JRM | Reviewed St. Luke's opposition to amendment of sub(h) claim in state court case; legal research and e-mailed briefs and orders to CC (Williams and Rossman) to assist in | 5.25 | $275.00 | $1,443.75 |

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| | | having the amendment effected; T/Cs (x2) w/ CC (Rossman and Phillips) re: federal complaint; initial review of federal complaint; review of information to include in letter to US Atty; drafted initial letter to US Atty. | | | |
| 4/18/2016 | JRM | T/C w/ client re: case status and upcoming state trial | 1.00 | $275.00 | $275.00 |

Monteleone Affidavit, Dkt. 95-1, at 8–9.

Dr. Madsen never filed a reply as to how Johnson & Montelone, LLP's contested entries relate to the state action. Upon review, the Court finds the contested April 18, 2016 entry seems to solely relate to work done on the *state* case, rather than the litigation before this Court. That billing entry shall be excluded entirely. Johnson & Montelone, LLP's other contested hours within this section shall also be reduced by an additional 10%—for a total reduction on these entries of 27%.

   c.  <u>Hospital Privileges</u>

Defendants argue that three of Johnson & Montelone's entries relate to Dr. Madsen's hospital medical staff credentialing ("privileges" or "privileging"). They state that as hospital credentialing is unrelated to her allegations in the case, it is time not reasonably expended in the case. The entries of concern are as follow:

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 1/07/2018 | JRM | T/C w/ client re: retaliation from SLHS as to client's hospital privileges. | 0.17 | $275.00 | $46.75 |
| 1/09/2018 | JRM | O/C w/ client re: issues with re-privileging at St. Luke's. | 1.00 | $275.00 | $275.00 |
| 1/21/2018 | JRM | Drafted letter to SLHS re: client's re-privileging. | 2.00 | $275.00 | $550.00 |

Dkt. 95-1, at 10. Dr. Madsen did not respond to Defendants' objection. The Court will reduce Dr. Madsen's requested attorneys' fees for Monteleone's work by $871.75.

  d.  <u>Duplicative entries</u>

St. Luke's Defendants[3] argue attorney fees should be reduced because both Johnson & Montelone and Rossman Law submitted nearly duplicative entries for work performed for the client. Rossman Law counters that those entries "involve conferences between co-counsel and cooperation" and such work is not unnecessarily duplicative but "rather reflects that the representation of Dr. Madsen involved attorneys from two different firms working together on various tasks associated with the representation." Dkt. 102, at 5. Johnson & Montelone, LLP did not respond.

Courts should only reduce attorney fees for *unnecessarily* duplicative work, as necessary duplication is "inherent in the process of litigating over time." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "Determining whether work is unnecessarily duplicative is no easy task," and "even [a] district court cannot tell by a cursory examination which hours are unnecessarily duplicative." *Id.* A district court must specifically explain which fees it thinks are duplicative and why if it imposes a reduction greater than 10 percent for duplicative entries. *Id.*

The disputed "duplicative" entries for Johnson & Montelone, LLP's are below:

| Date | Staff | Description | Hours | Rate | Charges |
|---|---|---|---|---|---|
| 11/17/2014 | JRM | Reviewed documents from client; O/C w/ CC (Williams) re: case status and how to proceed with | 4.50 | $275.00 | $1,237.50 |

[3] Joined by Otto and Gude. Dkt. 100.

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| | | FCA case; reviewed proposed, amended complaint on W&H case to include FCA sub(h) claim. | | | |
| 4/03/2015 | JRM | Reviewed St. Luke's opposition to amendment of sub(h) claim in state court case; legal research and e-mailed briefs and orders to CC (Williams and Rossman) to assist in having the amendment effected; T/Cs (x2) w/ CC (Rossman and Phillips) re: federal complaint; initial review of federal complaint; review of information to include in letter to US Atty; drafted initial letter to US Atty. | 5.25 | $275.00 | $1,443.75 |
| 6/02/2015 | JRM | O/C at RLG w/ client, Jim Weiss, and CC (Rossman); finalized FCA complaint; drafted and finalized letter to Wendy Olson, US Atty. | 2.25 | $275.00 | $618.75 |

Dkt. 99, at 6. The entries for Rossman Law are as follows:

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 11/17/2014 | ESR | Reviewed documents from Client; O/C w/ CC (Monteleone) re: case status and how to proceed with FCA case; reviewed proposed amended complaint on W&H case to include FCA sub(h) claim. | 4.50 | $350.00 | $1,575.00 |
| 4/03/2015 | ESR | Reviewed St. Luke's opposition to amendment of sub(h) claim in state court case; legal research and e-mailed briefs and orders to CC (Monteleone) to assist in having the amendment effected; T/C w/ CC Monteleone re: federal complaint; initial review of federal complaint; review of information to include in letter to US | 5.25 | $350.00 | $1,837.50 |
| 6/02/2015 | ESR | O/C at RLG w/ Client, Jim Weiss and CC (Monteleone); finalized FCA complaint; drafted and | 2.25 | $350.00 | $787.50 |

> finalized letter to Wendy Olson, US
> Atty.

*Id*. at 6–7.

The Court does not find the above entries to be unnecessarily duplicative. It is reasonable for co-counsel who meet with each other to bill for similar tasks and time. Accordingly, these entries will not be reduced.

      e.  <u>Objection to settlement</u>

Dr. Madsen originally opposed the Government's proposed settlement. Dkt. 81. She withdrew her opposition to the Government's motion to approve settlement on November 14, 2019. Dkt. 93.

Defendants argue that Dr. Madsen's attorneys should not recover fees incurred in opposing the Government's efforts to settle the case. They argue that because Dr. Madsen withdrew her settlement objection during the hearing, all of the expended hours opposing the settlement were unnecessary and extraneous. Dkt. at 99, at 8–9 (citing to *Guerra v. United States*, 75 F. Supp. 3d 1276, 1284 (W.D. Wash. 2014) (excluding fees attributable to withdrawn motion for summary judgment); *Wilderness Watch v. Mainella*, No. CV202-093, 2005 WL 2290294, at *4 (S.D. Ga. Sept. 20, 2005) (excluding from fee award fees attributable to "voluntarily withdrawn" motion for preliminary injunction); *T & M Meat Fair, Inc. v. United Food & Commercial Workers, Local 174*, No. 02 CIV 2415 RWS, 2002 WL 31202711, at *3 (S.D.N.Y. Oct. 3, 2002) ("disregarding completely" hours claimed pertaining to withdrawn class complaint and withdrawn motion for declaratory judgment and injunctive relief).

Dr. Madsen never responded to this particular objection in her replies. *See* Dkts. 101, 102. As the Court has no briefing in front of it rebutting Defendants' arguments that Dr. Madsen's hours spent objecting to the settlement were unnecessary to achieve the successful result obtained by her, *i.e.*, the settlement, the Court will reduce that time.[4] The contested time is shown below:

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 11/14/2019 | JRM | Prepared for and attended motions hearing on Ds' Mt to Dismiss and US's Mt to Approve Settlement and Dismiss Case. | 4.25 | $315.00 | $1,338.75 |
| 2/21/2019 | JRM | Drafted and finalized the Memo in Opp to Mt to Approve Settlement and Dismiss case; legal research. | 10 | $315.00 | $3,150.00 |

Since the contested entries are block-billed (also containing entries for time spent relating to Defendants' motions to dismiss), the Court will reduce the fees by 50%.

    f.   Curing deficiencies in pleadings

Idaho Elks[5] argue that Johnson & Monteleone and Rossman Law's fees should be reduced for the time they spent curing the deficiencies in Dr. Madsen's Complaint. It contends that because Dr. Madsen amended her Complaint four times, and "still failed to adequately plead her case,"[6] those fees are not reasonable. Dkt. 97, at 9. In response, Rossman Law notes that Idaho Elks cites to no authority to support its argument and, in

---

[4] In so doing, the Court is not holding that attorneys can never recover fees for voluntarily withdrawn motions, merely that attorneys may not do so in this case.

[5] Joined by Otto and Gude. Dkt. 100.

[6] The Court ultimately never ruled on whether Dr. Madsen's Third Amended Complaint was adequately pled.

fact, public policy supports awarding fees "related to whistleblower complaints and the purposes of the FCA." Dkt. 101, at 5.

Here, the Court finds that time spent curing pleading deficiencies was reasonably spent in furtherance of achieving Dr. Madsen's success. The Court will not reduce the fees.

3. *Lodestar Calculations*

Based on the previous analysis the Court has included a table showing the total amount recoverable by each attorney and paralegal involved in preparing Dr. Madsen's case.

Below is the amount recoverable by Johnson & Monteleone:

| INDIVIDUAL | POSITION | HOURLY RATE | HOURS | TOTAL FEES |
|---|---|---|---|---|
| Jason Monteleone | Attorney | $ 275[7] | 73.52[8] | $20,218.00 |
| Jason Monteleone | Attorney | $ 315 | 7.13 | $2,244.38 |
| Cara Rice | Paralegal | $ 45 | 2.06 | $92.92 |
| **TOTAL** | | | | **$ 22,555.29** |

Below is the amount recoverable by Rossman Law:

| INDIVIDUAL | POSITION | HOURLY RATE | HOURS | TOTAL FEES |
|---|---|---|---|---|
| Eric Rossman | Attorney | $ 350 | 20.11 | $7,039.34 |
| Erica Phillips | Attorney | $ 300 | 8.21 | $2,462.25 |
| Jason Carroll | Paralegal | $ 90 | 1.87 | $168.08 |
| **TOTAL** | | | | **$9,667.95** |

## B. Kerr Factors

"The lodestar amount is presumptively the reasonable fee amount, and thus a

---

[7] Monteleone's hourly rate increased to $315.00 on January 1, 2019.

[8] All figures are rounded to nearest hundredth decimal. As a result, the total fee amount a reader might calculate given the listed Hourly Rate and Hours is slightly different than the calculated total fee amount.

multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000). An adjustment to the lodestar amount must be supported by both "specific evidence" on the record and detailed findings. *Id.* This is not a rare or exceptional case where the lodestar amount is unreasonably low or high based on an evaluation of the length and requirements of the proceedings. The Court will therefore award Johnson & Monteleone $22,555.29 in attorney fees and Rossman Law $9,667.95 in attorney fees under 31 U.S.C. § 3730(d)(2).

## C. Costs

Defendants do not contest Dr. Madsen's request for $510.60 in non-taxable costs. The Ninth Circuit has "repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). This sum will therefore be added to the award.

## D. Payment to Attorneys

Finally, Defendants do not take any position as to whether the fees should be paid directly to Dr. Madsen, or to her attorneys. Given that there is no evidence that Dr. Madsen has assigned her right to receive fees to her attorneys, the Court will order that Defendants pay the award to Dr. Madsen.

///

///

///

## V.    ORDER

IT IS HEREBY ORDERED:

1) Relator's Motion for an Award of Attorney Fees to Johnson & Monteleone, L.L.P. (Dkt. 95) is **GRANTED** in **PART** and **DENIED** in **PART**. The motion is **GRANTED** to the extent that the Court will award her $22,555.29 in fees. The motion is **DENIED** to the extent it seeks additional sums.

2) Relator's Motion for an Award of Attorney Fees to Rossman Law Group, P.L.L.C. (Dkt. 96) is **GRANTED** in **PART** and **DENIED** in **PART**. The motion is **GRANTED** to the extent that the Court will award her $9,667.95 in fees and $510.60 in non-taxable costs. The motion is **DENIED** to the extent it seeks additional sums.

DATED: February 21, 2020

David C. Nye
Chief U.S. District Court Judge